THE STATE, MARY CANNON AND STEPHEN CANNON,
PROSECUTORS, v. JOHN RYAN.

A notice to a tenant that after the expiration of his existing term he
would be charged an increased rent, if such notice is given on Sunday,
and the tenant simply remains in possession after his term ends, does
not raise a contract to pay such increased rent.

On *certiorari*.

Argued at November Term, 1886, before Justices REED,
MAGIE and PARKER.

For the prosecutors, *J. S. Wight.*

For the defendant, *T. J. Cloke.*

The opinion of the court was delivered by

REED, J.   This is a summary proceeding under the Land-
lord and Tenant act, instituted for the purpose of turning the
tenant or tenants out of possession for the non-payment of
rent.

Notice to pay the sum of $7, one month's rent, was served
on the prosecutors, on the 24th of April, 1886.

The affidavit upon which the rule to show cause was issued
was made April 27th, 1886.   Judgment was rendered against
the prosecutor Mary Cannon alone.   The affidavit sets out
that prosecutors were in possession of deponent's house upon
an agreement whereby deponent rented the said house to the
prosecutors, to hold the same from the 13th day of October,
1885, to the 13th day of April, 1886, at the rent of $6 a
month, to be paid in monthly payments in advance; that on
the 14th day of March, 1886, deponent gave notice to said
parties that he would charge the sum of $7 per month there-
after, and that one month's rent thereof, amounting to $7,
came due on the 14th day of April, 1886.

The notion of the justice was, obviously, that the tenants
remained in possession, and by so doing accepted the terms

which the landlord had communicated to them by his notice.

It is undoubtedly the law that contracts may arise by an acceptance of a proposition by actions as well as by words. 1 *Whart on Contracts*, § 6.

In the case of *Roberts* v. *Hayward*, 3 *Car. & P.* 432, a party occupied premises under an agreement for three years, at £45 a year, which expired at midsummer, 1826. He did not then go out, nor did the landlord take any steps to compel him, but at the Michaelmas following gave him notice to quit on Lady day, 1827, or pay the rent of £50 a year.

The tenant continued in, but refused to pay more than the £45 rent. Chief Justice Best said that the silence of the tenant is equivalent to his saying, "I will continue in on the terms of your proposal." It was held that a distress levied at the rate of £50 was regular. This ruling was affirmed *in banc*, on motion for a new trial.

It appears, however, that the 14th day of March, 1886, was Sunday. This objection was taken on the trial and in the reasons assigned for reversal here. The court attempted to amend the affidavit, on the ground that this was a clerical error, but no other date was substituted, and, in fact, no amendment was made.

Nor could any amendment of the affidavit have been made at the trial. No power is given by statute to amend it. It is a sworn statement of fact upon which the issuance of the summons and the subsequent proceedings rest. No new affidavit can be interjected into the case at the trial. So the case stands upon the fact that notice was given on a Sunday that the landlord would, after 'the expiration of the existing term, charge $7. The court will take judicial notice that the 14th of March, 1886, was Sunday. *Reed* v. *Wilson*, 12 *Vroom* 29.

Now, I am of the opinion that whatever force such notice, if given upon a working day, in connection with the retention of possession by the tenant, would have had in creating a new contract, this was rendered entirely nugatory by the Sunday service of the notice. I do not forget that the contract was not completed on Sunday. It would have arisen

only by the fact that retention of possession was an acceptance of the landlord's proposal or demand. But in proving the contract it was essential to prove a business matter occurring upon Sunday. Without proof of the notice, the retention of possession had no significance whatever. It is unlike those cases in which a preliminary conference held on Sunday has been merged into a contract made upon a secular day. Here the most important circumstance out of which the contract grew was done upon a Sunday, by the person who is now seeking to enforce it.

It is true that it is decided, in the case of *Tuckerman* v. *Hinkley*, 9 *Allen* 452, that where a letter was written and delivered on Sunday, requesting and promising to pay for services rendered afterwards, that in the absence of proof of an agreement made on that day to perform the same, the person who performs the service upon the faith of the promise contained in the letter can maintain an action upon it.

This seems to have been put upon the ground that the plaintiff was not involved in the illegal act.

" The mere receipt of the letter," said the court, " cannot be regarded as a violation of the statute." " The ground on which a plaintiff's action is defeated in such cases is that a party is not permitted to found a claim in a court of law upon his own contravention of law." The inference from the remarks in that case is that had the sender of the letter been the plaintiff, his act would have contravened the statute in a manner which would have shut him out from any recovery based upon it or an acceptance of it.

Upon that theory the landlord cannot, in this proceeding, invoke the notice for the purpose of raising the contract.

Our statute enacts that no traveling, worldly employment or business shall be done on Sunday.

In *Reeves* v. *Butcher*, 2 *Vroom* 224, it was held that the effect of the provision was to annul every transaction which, if performed on a week day, would be enforceable in a court of justice, and that payment of interest upon a note given on Sunday does not cure the invalidity of the instrument.

The absolute avoidance of all contracts made on Sunday does not arise from any express words in the statute declaring such contracts void. It rests upon the statutory inhibition of all worldly employment or business on Sunday, and comes about from the policy of the courts in refusing to recognize any act or word which, being a part of worldly employment or business, is done on Sunday. I am unable to perceive how worldly business done upon Sunday can afford any support to a contract.

Whether all the negotiations and acts which would make up the completed agreement take place on Sunday, or only a part of them, if such part is essential to the contract, the statutory prohibition is encountered.

In the last as well as the first condition of affairs, the court, to support the contract, would be compelled to recognize with approval the transaction of worldly business on Sunday.

In the present case the landlord is the actor, and he has no case against the prosecutor unless his act of notification is recognized as a legal proceeding. It was worldly business and cannot be recognized, and so the contract to pay the increased rent falls to the ground.

Upon this ground I think the judgment below should be reversed.